**In re Anonymous Nos. 32 D.B. 84 and 91 D.B. 85**

Disciplinary Board Docket nos. 32 D.B. 84 and D.B. 85.

GILBERT, *member*, August 4, 1987—Pursuant to rule 208(d) of the Pennsylvania Rule of Disciplinary Enforcement, the disciplinary board of the Supreme Court of Pennsylvania submits its findings and recommendations regarding the above captioned petitions for discipline.

## HISTORY OF THE PROCEEDINGS

Respondent, [     ], born in 1942, was admitted to practice law in the commonwealth of Pennsylvania on or about April 26, 1971. He has maintained several offices over the years and his office at the time of these two petitions for discipline was located at [     ]. Respondent has had a long history of previous discipline, including eight informal admonitions between 1977 and 1981 and a public censure in 1983. While the matter leading to public censure was pending, yet another disciplinary proceeding was begun which eventually culminated in the suspension of respondent from the bar for one year beginning on October 18, 1984. Suspension was imposed for respondent's act of commingling client funds with his personal funds. The Pennsylvania

Supreme Court suspended respondent for one year despite the recommendation of the hearing committee and the board for a two-year suspension, and the dissenting recommendation of three board members for disbarment. Respondent has not sought reinstatement since the period of suspension has expired.

Even before the court suspended respondent, the office of disciplinary counsel filed on April 9, 1984, a new petition for discipline (32 DB 84) the "(the [A] Case") charging respondent with professional misconduct and converting to his own use and purpose $1084 entrusted to him as bail money for a client's husband. It was averred he had thereby violated the following disciplinary rules of the code of professional responsibility:

DR 1-102(A)(3) — which prohibits an attorney from engaging in illegal conduct involving moral turpitude,

DR 1-102(A)(4) — which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation,

DR 1-102(A)(6) — which prohibits an attorney from engaging in other conduct which adversely reflects on fitness to practice law,

DR 9-102(A) — which requires that all funds of clients paid to an attorney, except advances for costs and expenses, be kept in identifiable bank accounts in the state in which the attorney's office is located and that no funds belonging to the attorney shall be deposited therein except for funds sufficient to pay bank charges and funds belonging in part to the client and in part to the attorney,

DR 9-102(B)(2) — which requires an attorney to identify and label securities and properties of a client promptly upon receipt and place them in a safe

deposit box or other place of safekeeping as soon as practicable,

DR 9-102(B)(3) — which requires an attorney to maintain complete records of all funds, securities and other properties of a client coming into the possession of the lawyer and to render appropriate accounts to the client regarding them, and

DR 9-102(B)(4) — which requires an attorney to promptly pay or deliver to a client as requested by the client funds, securities, or other properties in the lawyer's possession which the client is entitled to receive.

While respondent was under the one-year suspension of October 18, 1984, the office of the disciplinary counsel filed on December 10, 1985, an additional petition for discipline (91 DB 85) (the "[B] case") charging respondent with practicing law while under suspension and accepting payment of $4,300 towards his fee even though he knew he was suspended and not permitted to accept this new client. The petition averred that respondent was thus guilty of violating the following disciplinary rules of the code of professional responsibility:

DR 1-102(A)(1) — which prohibits an attorney from violating a disciplinary rule,

DR 1-102(A)(3) — which prohibits an attorney from engaging in illegal conduct involving moral turpitude,

DR 1-102(A)(4) — which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation,

DR 2-110(A)(3) — which requires an attorney who withdraws from employment to refund promptly any part of a fee paid in advance that has not been earned,

DR 9-102(B)(3) — which requires an attorney to maintain complete records of all funds, securities

and other properties of a client coming into the possession of the lawyer and to render appropriate accounts to the client regarding them, and

DR 9-102(B)(4) — which requires an attorney to promptly pay or deliver to a client as requested by the client funds, securities, or other properties in the lawyer's possession which the client is entitled to receive.

Respondent filed an answer to petition 32 DB 84 on July 1, 1985. An answer and new matter to petition 91 DB 85 was filed on December 24, 1985. Petitions for discipline numbers 32 DB 84 and 91 DB 85 were consolidated for hearing. A hearing was held before hearing commitee [ ] consisting of [ ], on March 10 and 20, and May 28, 1986. After lengthy hearings the committee concluded that in the "[A] case" (32 DB 84) respondent had returned monies to the client, even though he considered them payments of his fee rather than advances for bail money, and that the petitioner had not met its burden proving otherwise.

The hearing committee concluded in the "[B] case" (91 DB 85) that respondent had agreed to represent [B] in a criminal case arising out of an arrest and had collected fees for said legal services even though he knew that due to his suspension by the Supreme Court, he could neither accept any new clients nor deliver the services covered by the fees. The committee further concluded that respondent's drinking problems (which were the main thrust of his defense) did not excuse his misconduct, but that they had contributed to his problems and that he had committed himself to in-patient treatment, was attending AA meetings regularly, and that he now seemed contrite and prepared to recognize the disasterous consequences of his personal problems and habits.

The hearing committee concluded: "In our deliberation we have weighed [respondent's] prior record, his behavior in the [B] matter, his drinking problem, and his apparent willingness to face and control them along with our duty to the public and the legal profession. Our recommendation is a suspension for three years, with credit for the time served," retroactive to October 18, 1984, the date of the court's suspension.

At each stage in these proceedings, respondent replied through counsel to each of the petitions, with the most significant being the response to the [B] charge (91 DB 85). It was at this time (December 24, 1985) the "new matter" of [respondent's] drinking was injected into the case. This issue was further developed in respondent's reply to the hearing committee's report in which respondent, through counsel, admitted to a long standing drinking problem going back to personal family tragedies in the 1970's, elaborated on his steps to deal with it, and stressed the positive evaluation given to the hearing committee by various character witnesses, including a physician-lawyer.

The disciplinary counsel saw fit not to file formal exceptions to the hearing committee report and instead replied, via letter, to argue for a new *consecutive,* rather than *concurrent, suspension.* Respondent replied by filing a letter brief opposing petitioner's exceptions and reqesting oral argument. Respondent argued for credit of "time served" stating as reasons respondent's efforts to reform his alchoholism.

There was a subsequent oral argument held on March 27, 1987, before board members J. Curran, chairman, D. Gilbert and J. Padova. Little new evidence was presented at this hearing and much of the discussion dealt with the length and timing of

the proposed suspension. By this time, also, the matter of [respondent's] drinking problems had become central to his defense.

## FINDINGS OF FACT

(1) Respondent, [          ], was born in 1942 and was admitted to practice law in the commonwealth of Pennsylvania on or about April 26, 1971. He presently is suspended from the practice of law in the commonwealth of Pennsylvania as a result of an order of the Supreme Court of Pennsylvania dated October 17, 1984, effective November 16, 1984.

(2) [Respondent] received his undergraduate training at [          ] University and received his legal training at [          ] University.

(3) [Respondent] initially worked in the district attorney's office of [          ] County.

(4) In 1972 [respondent] began his own law practice as a sole practitioner, and he continued as such until his suspension from the practice of law.

(5) [Respondent] was active in many community activities including serving as a director of the [          ] Boys Club, a member of the [          ], and a member of his church. Further, [respondent] was politically active and had been a [          ] candidate for [          ] City Council.

(6) [Respondent] testified during his years of practice that he had a serious drinking problem.

(7) He testified that he began drinking in 1972 when his three-year-old died as a result of drowning; that his drinking essentially became totally out of control after his divorce in 1976; and that during 1982, 1983 and 1984 he was intoxicated almost every day.

(8) Since his suspension from practice of law in November 1984, [respondent] has sought to control his alcoholism.

(9) He sought the help of attorney [C] who is the chairman of the Pennsylvania Bar Association committee established to assist lawyers with drug or alcohol related problems.

(10) He also voluntarily sought inpatient care for his alcoholism at the [          ] Hospital in [          ], Pennsylvania and was admitted there as an inpatient for 38 days from March 1985 to April 1985. He successfully completed the program.

(11) [Respondent] told the hearing committee that he suffered a relapse in the summer of 1985, and began drinking again, but that he was able to retain control of his alcoholism and that he had had his last drink in August 1985.

(12) [Respondent] testified he has been regularly attending AA meetings and other types of alcohol support group meetings since August 1985.

(13) The parties by stipulation offered the following record of [respondent's] disciplinary record:

(a) informal admonition, January 19, 1977, for violating DR 6-101(A)(3) and DR 7-101 (A);

(b) informal admonition, January 19, 1977, for violating DR 6-101(A)(3);

(c) informal admonition, April 26, 1979, for violating DR 6-101(A)(3), DR 7-101(A)(1), (2) and (3);

(d) informal admonition, November 13, 1980, for violating DR 2-106(A), DR 6-101(A)(3), DR 7-101(A)(1), (2) and (3);

(e) informal admonition, December 16, 1980, for violating DR 6-101(A)(3), DR 7-101(A)(1), (2) and (3);

(f) informal admonition, February 10, 1981, for violating DR 6-101(A)(3), DR 7-101(A)(1), (2) and (3);

(g) informal admonition, February 12, 1981, for violating DR 1-102(A)(5) and DR 6-101(A)(3);

(h) informal admonition, March 27, 1981, for violating DR 6-101(A)(3) and DR 7-101(A)(1), (2) and (3);

(i) public censure, Supreme Court, August 15, 1983;

(j) one-year suspension, Supreme Court, October 18, 1984.

*[A] Charge (32 DB 84)*

(14) In or about July 1983, members of the family of [A] retained [respondent] to represent [A] in a murder case in the [ ] County Common Pleas Court.

(15) [Respondent] requested and the family paid a retainer of $600. No further fees were requested at that time although it was agreed that additional fees up to $5,000 would be required prior to [A's] trial.

(16) Bail for [A] was set at $50,000, an amount which neither he nor the family was able to post.

(17) On September 22, 1983, respondent represented [A] at a bail reduction hearing

(18) On or about September 22, 1983, at the bail reduction hearing, [D], [A's] wife, endorsed to respondent a check in the amount of $1,084.

(19) Father [E] is an Episcopal priest who had been the operator of the [F] Institute in [ ] until about December 1985. His main function was to aid

merchant seamen in the port of [     ]. Father [E] was with [D] when she handed him the $1,084 check.

(20) Father [E] testified he told respondent that the check was for [A's] bail. Father [E] also testified that he was present when the request for bail reduction was denied. He indicated he did not ask for the return of the $1,084 check. He knew substantial fees were still owed to the respondent. He stated that it was possible that [D] may have after the hearing allowed the $1,084 to be kept as fees.

(21) [Respondent] testified that he had been drinking when he accepted the check, but in any event that he believed the money was an advance toward his legal fees. He did not recall Father [E] saying the money was for bail. [Respondent] recalls from his conversations with [D] that the $1,084 was towards his fee.

(22) [Respondent] cashed the $1,084 check at [G] Bank on or about September 22, 1983.

(23) Respondent did not place the $1,084 in an escrow account.

(24) [D] did not testify before the committee. It was stipulated that had she testified she would have stated she speaks only Spanish and it was her understanding the funds were for bail.

(25) Subsequent to September 22, 1983, the [A] family determined that they no longer wished [respondent's] services and they discharged him.

(26) [D] demanded that [respondent] return to her the $1,084.

(27) On or about October 13, 1983, [respondent]

offered to refund $600 retained to [D] and informed her that he did not have the entire $1,084 to pay her.

(28) [Respondent] refunded the sum of $1,080.00 to [D] on or about October 18, 1983.

(29) Although respondent did not refund the sum of $1,080 to [D] until after he had received a DB-7 letter of inquiry from petitioner. We find that the return of the funds was full and prompt. We also credit [respondent's] explanations that he returned the money even though he had considered it fee because he wanted to avoid yet another disciplinary proceeding. We further conclude that petitioner has not met its burden in establishing that the $1,084 was not to be payment towards the originally agreed-upon $5,000 fee.

*[B] Charge (91 DB 85)*

(30) As a result of an order of the Supreme Court of Pennsylvania dated October 17, 1984, [respondent] was prohibited pursuant to rule 217, Pa.R.D.E., from accepting any legal matters after October 17, 1984,

(31) [B], a/k/a [B] ("[B]"), is or was defendant in the case of *Commonwealth v. [B]*, [  ] Municipal Court no. [  ].

(32) [B] was arrested on or about October 27, 1984, on drug charges.

(33) Subsequent to her arrest, [B] consulted [respondent] about representing her as her defense counsel on the aforesaid criminal charges.

(34) [B] was referred to respondent by a relative, [H].

(35) In addition to being a relative to [B], [H] is an acquaintance of respondent and has been for 17 years.

(36) [H] was present during meetings held in November 1984 and December 1984 when [B] paid money to respondent for fees.

(37) During the course of all those meetings, [H] did not hear [respondent] ever tell [B] that he was suspended from the practice of law.

(38) [Respondent] never told [B] of his suspension. She did not learn of it until on or about December 26, 1984, when [I] told her that [respondent] was suspended from practice.

(39) If she had known [respondent] were suspended, [H] never would have recommended him to [B] as an attorney [H] first learned of [respondent's] suspension from [B], after December 26, 1984.

(40) [B] never would have paid any money to [respondent] had she known that he was suspended and would not be able to represent her.

(41) [Respondent] did not enter his appearance in [B's] case.

(42) On or about November 1, 1984, [respondent] referred [B's] case to [I].

(43) [Respondent] told [B] that the reason [I] would be at the November 2, 1984 hearing was because [respondent] did not want to appear before the judge due to sit that day.

(44) During November and December 1984, [B] made five payments toward her legal fees to respondent totaling $4,300. She received receipts for those payments.

(45) In or about December 1984, [I] entered his appearance as [B's] attorney in her criminal case.

(46) In January 1985, both [B] and her counsel, [I], made demands on [respondent] for a return or refund of the $4,300 legal fee paid to [respondent] as aforesaid.

(47) Until [respondent] replied by answer dated June 26, 1985, to the letter of inquiry in the instant matter he had not responded to [B], he had not accounted to [B] for the $4,300 in legal fees which he had received as aforesaid, and he had not agreed to refund any portion of said legal fees.

(48) [Respondent], however, has paid $3,800 to the Client Security Fund to refund the monies paid by [B].

(49) [I] denied he had a fee agreement with respondent with regard to his representation of [B].

(50) [I] received referrals of other cases from [respondent] after he became suspended from practice.

(51) [I] denied he had a fee agreement with [respondent] relating to the clients whose cases [I] was assuming and was paid money intermittently by respondent for those cases.

(52) [I] first discussed [respondent's] suspended status with [B] on or about December 26, 1984.

(53) On December 26, 1984, [I] first discussed with [B] the question of what his fees would be for representing her.

(54) Prior to December 26, 1984, [I] was not aware that [B] had paid any legal fees to respondent.

(55) After learning that [B] was unaware of respondent's suspension and that [B] had paid money to respondent for legal fees, [I] wrote a letter to respondent demanding that he refund the legal fees which [B] had paid.

(56) [Respondent] never replied to [I's] letter, in writing, but he did place a telephone call to [I]. During the telephone conversation, [respondent] expressed to [I] his displeasure that the letter had been written and made comments to the effect that the letter itself was unethical and that one attorney should not take such steps against another attorney.

## CONCLUSION OF LAW

*[A]*

The board concludes that there were no violations of the disciplinary rules in respondent's actions regarding the [A] matter.

*[B]*

The board concludes that respondent has violated the following disciplinary rules by taking on the [B] matter:

DR 1-102(A)(1), which prohibits an attorney from violating a disciplinary rule,

DR 1-102(A)(3), which prohibits an attorney from engaging in illegal conduct involving moral turpitude,

DR 1-102(A)(4), which prohibits an attorney from engaging in conduct involving, dishonesty, fraud, deceit or misrepresentation,

DR 9-102 (B)(3), which requires an attorney to maintain complete records of all funds, securities, and other properties of a client coming into posses-

sion of the lawyer and to render appropriate accounts to the client regarding them,

DR 9-102(B)(4), which requires an attorney to promptly pay or deliver to a client as requested by the client funds, securities or other properties in the lawyer's possession which the client is entitled to receive, and

DR 2-110(A)(3), which requires an attorney who withdraws from employment to refund promptly any part of a fee paid in advance that has not been earned.

## DISCUSSION

The board is aware of the long history of discipline in [respondent's] case and the serious nature of the charges brought in the [B] case of his knowingly accepting a new client (and fees) while under suspension.

The mitigating circumstances of [respondent's] drinking problems, extending back at least to the time when he first began to practice law in 1971, are, however, well documented. There seems little question that many of his previous failures to perform his obligations were somehow related to this longstanding problems.

The crucial question is [respondent's] current ability to practice law and conform to the code of ethics required of a member of the Pennsylvania bar. No evidence was presented in the lengthy proceedings of the hearing committee to indicate [respondent] is incapable of acting effectively as an attorney. Indeed testimony was repeatedly given that he functioned well in court in spite of his recognized problems with alcohol. What is significant is the clear evidence that [respondent] now recognizes the problem of his addiction, has sought rehabilita-

tion and counsel to deal with it, continues to attend AA meetings regularly, and is remorseful of his past misconduct. .

The conclusion drawn is that he has been suspended for a lengthy period of time and now should be able to proceed to seek reinstatement to the bar. The reinstatement process will be the proper time to thoroughly evaluate the current state of respondent's rehabilitation to determine if, in fact, as the hearing committee and witnesses attest, he is now prepared to resume practice as a lawyer in the commonwealth. As this is not part of the reinstatement process the evaluation of respondent's rehabilitation cannot be made at this time.

## RECOMMENDATION

The board adjudicated the two petitions for discipline at its meeting of April 9-10, 1987, and voted 8-2 to recommend to the Supreme Court that the matter be disposed of by a two-year suspension, retroactive to October 17, 1985, the date of the end [respondent's] previous suspension by court order. The board further recommends that respondent be directed to pay the costs of investigation and prosecution of this matter.

Mr. Schwartzman dissented and would recommend disbarment.

Mr. Padova dissented and would recommend a three-year suspension, effective October 17, 1985.

Messrs. McDonald, McGinley and Tumolo did not participate in the adjudication.

## ORDER

PER CURIAM:

And now, this September 3, 1987, upon consideration of the report and recommendations of the disciplinary board dated August 4, 1987, it is hereby or-

dered that [respondent] be and he is suspended from the bar of this commonwealth for a period of three years, retroactive to October 17, 1985, and he shall comply with all the provisions of rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the disciplinary board pursuant to rule 208(g), Pa.R.D.E.

Mr. Chief Justice Nix did not participate in the consideration or decision of this matter.

Mr. Justice Papadokos dissents and would issue a rule to show cause why respondent should not be disbarred.